UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALISKA LANDRY AND PATRINA DUPLESSIS | ) | CIVIL ACTION NO. |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ORLEANS PARISH COMMUNICATION DISTRICT | ) | |
| | ) | |
| *Defendant.* | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**NOW INTO COURT**, Plaintiffs,  Aliska Landry ("Ms. Landry"), and Patrina Duplessis ("Ms. Duplessis") (Collectively hereinafter "Plaintiffs") by and through undersigned counsel, hereby submits their Complaint against Orleans Parish Communication District, ("Defendant" or "OPCD").

## INTRODUCTION

1.

Plaintiffs, by and through their attorney, brings this action against OPCD for violations of the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, violations of 42 U.S.C. § 2000e et seq., Age Discrimination in Employment Act of 1967, and violations of 42 U.S.C. § 1981 et seq. ("Title VII").

## JURISDICTION AND VENUE

2.

1

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. § 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under (i) under any Act of Congress providing for the protection of civil rights; (ii) Age Discrimination and Employment Act of 1967 and (iii) Title VII. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.

Defendant is an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

4.

This court has personal jurisdiction over OPCD. Defendant OPCD is a non-profit company doing business in Louisiana. At all times relevant, OPCD operated its business within the State of Louisiana.

5.

Defendant operates its business within the Eastern District of Louisiana. All actions and inactions by Defendants alleged herein occurred within the Eastern District of Louisiana. Venue in this district is proper for the Defendant pursuant to 28 U.S.C. §1391(b) & (c).

**<u>PARTIES</u>**

6. Plaintiff Aliska Landry is an African American female residing in New Orleans, Louisiana. At all relevant times, Plaintiff has been resident of the State of Louisiana

and met definition of an "employee" under all applicable statutes.

7. Plaintiff Patrina Duplessis is an African American female residing in New Orleans, Louisiana. At all relevant times, Plaintiff is and has been resident of the State of Louisiana and met definition of an "employee" under all applicable statutes.

8.

Upon information and belief, OPCD is a non-profit company that operates Public Safety Answering Point (PSAP) for all emergency communications via 9-1-1 and non-emergency city services via 3-1-1 within Orleans Parish. At all relevant times, OPCD has met the definition of an "employer" under all applicable statutes.

**FACTS**

9.

OPCD is a non-profit company that operates the Public Safety Answering Point (PSAP) for all emergency communications via 9-1-1 and non-emergency city services via 3-1-1 within Orleans Parish that employee about 140 individuals across the United States, including Louisiana.

10.

OPCD operates a branch of its corporation at 118 City Park Ave, New Orleans, LA 70119.

11.

In support of Ms. Duplessis' allegations of a hostile work environment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., Ms. Duplessis further alleges:

12. Patrina Duplessis is an African American woman over 40 years old and therefore protected under Title VII of the Civil Rights Act of 1964.

13. Throughout her tenure, Ms. Duplessis consistently fulfilled critical HR and payroll responsibilities and maintained a satisfactory performance record. Despite her

3

professionalism, she was subjected to a pattern of racially charged hostility, targeted exclusion, and retaliatory conduct that created an intolerable and discriminatory work environment.

14. In August 2023, OPCD Interim Executive Director Mr. Karl Fasol (Caucasian male) began asserting inappropriate influence over hiring decisions, expressing a clear desire to select candidates based on personal preference rather than merit. When Ms. Duplessis objected and advocated for fair, objective hiring practices, Mr. Fasold dismissed her concerns by stating, "I can do whatever I want." Ms. Duplessis reported this comment to her supervisor, Plaintiff Aliska Landry (African American female), but no corrective action was taken.

15. Following her protected complaint, Ms. Duplessis became the target of increasingly hostile behavior from Mr. Fasold. In a meeting on August 29, 2023, Mr. Fasold openly admitted he felt "animosity" toward Ms. Duplessis, falsely accused her of being part of an "in-crowd," and criticized her perceived alliances. These personal remarks, delivered in a professional setting, reflected both racial and gender-based stereotypes and fostered a divisive and hostile work culture.

16. Shortly after Ms. Duplessis formally filed a grievance regarding Mr. Fasold's misconduct, she was subjected to further mistreatment. Despite her prior recusal from the hiring process due to a conflict of interest, Mr. Fasold undermined established hiring protocols to select Heather Hilliard (Caucasian female) as a candidate for a high-ranking position. Before any interviews had taken place, Mr. Fasold openly declared that Ms. Hilliard was "the better candidate," demonstrating a pre-determined outcome. He had also given Ms. Hilliard a tour of the agency, showed her the office

she would occupy, and prematurely notified staff of her expected arrival. Moreover, he instructed employees not to document interview responses, further eroding transparency and fairness in the workplace.

17. Following Ms. Hilliard's appointment as Deputy Director, Ms. Duplessis was subjected to ongoing retaliatory actions that further contributed to a racially hostile work environment. She was stripped of core HR responsibilities, removed from the FMLA case management process, excluded from the Policy Writing Team, and required to return agency credit cards, actions that were neither justified nor applied to similarly situated employees outside her protected class.

18. Despite filing an internal retaliation complaint, OPCD failed to investigate or remediate the situation. Instead, on September 25, 2023, Ms. Duplessis was summarily terminated, along with Ms. Landry the only other remaining African American woman over the age of 40 in a leadership position, under the pretext of budget constraints. Notably, no employees under the age of 40 were terminated, and the agency subsequently re-filled the payroll role under a different title without offering the position to Ms. Duplessis, despite her qualifications and internal experience.

19. The racially charged hostility, exclusion from critical decision-making, undermining of professional authority, and retaliatory elimination of her role all reflect a pervasive and discriminatory atmosphere cultivated by Mr. Fasold and tolerated by OPCD leadership.

20. Mr. Fasold's admission that he encouraged employees to submit false complaints about Ms. Duplessis and his personal vendetta against her for past associations with

former leadership further demonstrates the racial animus and retaliatory intent behind his actions.

21. Taken together, these events created a hostile work environment for Ms. Duplessis in violation of Title VII of the Civil Rights Act of 1964. She was subjected to unwelcome conduct based on her race, which was severe, pervasive, and altered the conditions of her employment. OPCD failed to take prompt or effective remedial action, thereby allowing the hostile conditions to persist and ultimately terminating Ms. Duplessis in retaliation for her protected opposition to discriminatory practices.

22. Ms. Duplessis was subjected to a hostile work environment. Ms. Duplessis alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact foster a hostile work environment based on his race under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq.

23.

In support of Ms. Duplessis' allegations of a hostile work environment based on her race and ethnicity under 42 U.S.C. § 1981, Ms. Duplessis further alleges:

24. Plaintiff Patrina Duplessis is an African American woman who, at all relevant times, was employed by the Orleans Parish Communication District ("OPCD") as a Human Resources Generalist and Payroll Administrator. She consistently performed her duties competently and maintained a record of satisfactory performance.

25. Despite her qualifications and strong work record, Ms. Duplessis was subjected to differential treatment, hostility, and retaliation on the basis of her race by OPCD leadership, particularly Interim Executive Director Karl Fasold (Caucasian male).

26. In or around August 2023, Mr. Fasold began exerting improper influence over the

hiring process, disregarding objective standards and expressing a desire to select candidates based on personal preference.

27. Ms. Duplessis objected and advocated for fair and impartial hiring practices, Mr. Fasold dismissed her objections by stating, "I can do whatever I want." This comment reflected his disregard for institutional fairness and his intent to exclude African American employees from key decisions.

28. After voicing her opposition, Ms. Duplessis was immediately subjected to retaliatory and discriminatory treatment. Mr. Fasold admitted in a meeting that he felt "animosity" toward Ms. Duplessis and accused her of being part of an "in crowd," reflecting racialized assumptions and animus. These comments, made in a professional context, served to isolate and undermine Ms. Duplessis based on her race.

29. Following her internal grievance against Mr. Fasold, he proceeded to manipulate the hiring process to install Heather Hilliard (Caucasian female) into a leadership role. Prior to the conclusion of interviews, Mr. Fasold publicly declared that Ms. Hilliard was "the better candidate," and had already toured her through the facility, designated her office, and informed staff of her anticipated arrival. This revealed that the selection process was a sham designed to favor a white applicant over more qualified individuals of color.

30. After Ms. Hilliard assumed her position as Deputy Director, she began stripping Ms. Duplessis of core job responsibilities without justification. These adverse actions included removal from FMLA case management, exclusion from policy initiatives, and demands to return agency credit cards. These changes were not applied to similarly situated employees outside Ms. Duplessis' race.

31. Ms. Duplessis submitted a formal complaint regarding this racially motivated retaliation, but OPCD failed to investigate or take corrective action. Instead, on September 25, 2023, OPCD terminated Ms. Duplessis, along with Ms. Landry, the only other African American woman over 40 in a leadership role.

32. The stated justification was budgetary constraints which was pretextual. No younger or non-Black employees were similarly affected, and the role previously held by Ms. Duplessis was soon refilled under a different title, without offering her the opportunity to be rehired.

33. Mr. Fasold's admission that he encouraged employees to submit false complaints against Ms. Duplessis, and his expressed resentment over her association with prior African American leadership, further evidences the racial bias underlying his actions.

34. The hostile work environment, exclusion from decision-making processes, public undermining, and ultimate termination of Ms. Duplessis were racially motivated and intended to interfere with her right to make and enforce contracts on equal terms, in violation of 42 U.S.C. § 1981.

35. Ms. Duplessis was subjected to a hostile work environment. Ms. Duplessis alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact foster a hostile work environment based on his race under 42 U.S.C. § 1981.

36.

In support of Ms. Duplessis' allegations of racial discrimination under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq., Ms. Duplessis further alleges:

37. Ms. Duplessis is a member of a protected class, African American.

38. Plaintiff Patrina Duplessis is an African American woman who, at all relevant times,

was employed by the Orleans Parish Communication District ("OPCD") as a Human Resources Generalist and Payroll Administrator. Throughout her employment, Ms. Duplessis consistently performed her duties competently and maintained a record of satisfactory performance.

39. Despite her qualifications and positive history of work, Ms. Duplessis was subjected to adverse treatment, escalating hostility, and ultimately termination because of her race, in violation of Title VII.

40. In or around August 2023, OPCD Interim Executive Director Karl Fasold (Caucasian male) began improperly influencing the hiring process by disregarding objective hiring standards and openly expressing a desire to make selections based on personal preference rather than merit.

41. When Ms. Duplessis raised concerns about the fairness and legality of these practices and advocated for equal and objective hiring procedures, Mr. Fasold responded dismissively, stating, "I can do whatever I want." This response reflected a disregard for equal employment principles and a resistance to inclusive hiring practices, particularly those affecting African American employees.

42. After voicing her opposition to these discriminatory practices, Ms. Duplessis experienced immediate retaliation and racial hostility from Mr. Fasold.

43. During a meeting on or about August 29, 2023, Mr. Fasold stated that he felt "animosity" toward Ms. Duplessis and accused her of being part of an "in-crowd." These comments, infused with racial undertones, served to isolate and undermine Ms. Duplessis in the workplace.

44. Following her internal grievance concerning Mr. Fasold's conduct, he manipulated

the hiring process to install Heather Hilliard (Caucasian female) into a leadership role. Before interviews had concluded, Mr. Fasold had already given Ms. Hilliard a tour, assigned her an office, and informed staff of her upcoming appointment. He further undermined the fairness of the process by declaring Ms. Hilliard was "the better candidate," demonstrating a preordained selection based on race.

45. After Ms. Hilliard was appointed Deputy Director, Ms. Duplessis experienced a series of adverse employment actions. Without justification, she was removed from FMLA case management duties, excluded from the policy writing team, and required to return agency credit cards. These punitive measures were not imposed on similarly situated employees outside Ms. Duplessis's protected class.

46. Ms. Duplessis filed a formal internal complaint regarding this discriminatory and retaliatory treatment. OPCD failed to take corrective action or conduct a meaningful investigation. Instead, on September 25, 2023, Ms. Duplessis was terminated, along with Ms. Landry the only other African American woman over the age of 40 in a leadership role.

47. The proffered reason for Ms. Duplessis's termination was budget constraints which were pretextual. No similarly situated white or younger employees were terminated. Further, OPCD subsequently re-filled the payroll position under a different title without offering the role to Ms. Duplessis, despite her qualifications and familiarity with the agency's operations.

48. Additionally, Mr. Fasold admitted to encouraging employees to submit false complaints against Ms. Duplessis and expressed resentment regarding her prior associations with African American leadership at OPCD. These admissions reflect a

10

pattern of racial bias and discriminatory animus.

49. As a result of this discriminatory conduct, Ms. Duplessis was subjected to a hostile work environment, exclusion from key decision-making processes, unjustified removal of job duties, and ultimately termination on the basis of her race.

50. OPCD's actions constitute unlawful discrimination and retaliation under Title VII of the Civil Rights Act of 1964. Ms. Duplessis was treated less favorably than similarly situated employees outside her protected class, and OPCD failed to take prompt or effective remedial action to stop the ongoing discrimination and retaliation.

51. Ms. Duplessis was subjected to racial discrimination. Ms. Duplessis alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional racial discrimination in the terms and conditions of Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq.

52.

In support of Ms. Duplessis' allegations of racial discrimination under 42 U.S.C. § 1981, Ms. Duplessis further alleges:

53. Plaintiff Patrina Duplessis is an African American woman who was employed by the Orleans Parish Communication District ("OPCD") as a Human Resources Generalist and Payroll Administrator. At all relevant times, Ms. Duplessis was qualified for her position and consistently met the legitimate expectations of her job performance.

54. Despite her competence and dedication, Ms. Duplessis was denied the same rights to enjoy the benefits, privileges, terms, and conditions of employment as white employees, in violation of 42 U.S.C. § 1981.

11

55. Beginning in or around August 2023, OPCD Interim Executive Director Karl Fasold (Caucasian male) began exerting undue and inappropriate influence over employment decisions, particularly in the hiring process. Mr. Fasold openly disregarded objective qualifications and expressed a preference to hire individuals based on personal preference, rather than merit.

56. When Ms. Duplessis objected to these practices and advocated for fair and merit-based hiring decisions, Mr. Fasold summarily dismissed her objections, declaring, "I can do whatever I want." His conduct and remarks reflected a deliberate effort to exclude African American employees from participating in, and benefiting from, critical employment decisions.

57. Following her opposition to Mr. Fasold's discriminatory conduct, Ms. Duplessis became the target of racial animus. In a professional meeting, Mr. Fasold stated that he felt "animosity" toward Ms. Duplessis and accused her of being part of an "in-crowd" coded language reflecting racial bias and an effort to undermine her credibility and authority in the workplace.

58. After Ms. Duplessis filed an internal grievance concerning Mr. Fasold's conduct, he manipulated the hiring process to ensure the appointment of Heather Hilliard (Caucasian female) to a leadership role. Before the interviews concluded, Mr. Fasold had already toured Ms. Hilliard through the office, designated her workspace, and informed staff of her anticipated hire. He also declared that Ms. Hilliard was "the better candidate," demonstrating that the selection process was a front intended to favor a white applicant.

59. Upon Ms. Hilliard's appointment, Ms. Duplessis was stripped of key job

12

responsibilities, including FMLA case management, policy development participation, and access to agency resources such as credit cards. These adverse actions were not imposed on similarly situated white employees, and no legitimate business justification was provided for the changes.

60. Despite submitting a formal complaint regarding the discriminatory treatment, OPCD failed to investigate or take remedial action. Instead, on September 25, 2023, OPCD terminated Ms. Duplessis along with another African American woman over the age of 40—under the purported rationale of budget constraints.

61. The budget-based justification was pretextual. No white or younger employees were terminated, and Ms. Duplessis's role was subsequently re-filled under a new title without consideration of her qualifications or prior experience. This exclusion from reemployment opportunities further deprived her of the right to make and enforce contracts on equal footing with white employees.

62. Additionally, Mr. Fasold admitted that he encouraged employees to file false complaints against Ms. Duplessis and expressed resentment toward her due to past associations with African American leadership. These statements demonstrate explicit racial animus and intentional efforts to impair Ms. Duplessis's contractual rights based on her race.

63. The pattern of hostility, exclusion, public disparagement, and termination suffered by Ms. Duplessis was motivated by race and was intended to interfere with her ability to participate in and benefit from her employment contract on the same basis as white employees.

64. Defendant's actions constitute intentional racial discrimination in violation of 42

U.S.C. § 1981, which prohibits race-based impairment of the right to make and enforce contracts, including the enjoyment of all benefits, privileges, terms, and conditions of employment.

65. Ms. Duplessis was subjected to racial discrimination. Ms. Duplessis alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional racial discrimination in the terms and conditions of Plaintiff's employment under 42 U.S.C. § 1981.

66.

In support of Ms. Duplessis' allegations of age discrimination under the Age Discrimination in Employment Act, Ms. Duplessis further alleges:

67. Ms. Duplessis is a member of a protected class, African American.

68. Plaintiff Patrina Duplessis is an African American woman over the age of 40 who, at all relevant times, was employed by the Orleans Parish Communication District ("OPCD") as a Human Resources Generalist and Payroll Administrator. Ms. Duplessis was qualified for her position and consistently performed her duties in a satisfactory and professional manner.

69. Despite her proven performance and tenure, OPCD subjected Ms. Duplessis to adverse employment actions and disparate treatment on the basis of her age, in violation of the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 et seq.).

70. In or around August 2023, Interim Executive Director Karl Fasold (Caucasian male) began asserting undue influence over hiring and personnel decisions. Mr. Fasold consistently disregarded established policies and procedures and appeared to favor younger, less experienced employees and applicants in hiring and advancement

14

decisions.

71. When Ms. Duplessis objected to Mr. Fasold's inappropriate hiring practices and advocated for fair, objective decision-making, she was dismissed and marginalized, and her concerns were ignored.

72. Following her objections, Mr. Fasold engaged in a pattern of retaliatory and discriminatory conduct. He made personal and disparaging remarks toward Ms. Duplessis, including stating he felt "animosity" toward her and accusing her of being part of an "in-crowd," language that reflected efforts to isolate her and diminish her professional standing.

73. Shortly thereafter, Mr. Fasold manipulated the hiring process to install Heather Hilliard (Caucasian female), a significantly younger candidate, into a leadership position for which other employees may have been more qualified. Prior to conducting formal interviews, Mr. Fasold had already designated Ms. Hilliard's office, toured her through the agency, and told staff she would be hired, making the process a mere formality.

74. After Ms. Hilliard's appointment, Ms. Duplessis was systematically stripped of core job responsibilities and excluded from major HR functions and decision-making bodies. These adverse employment actions were not taken against similarly situated younger employees and were not supported by any legitimate business rationale.

75. Ms. Duplessis filed a formal internal complaint regarding her treatment, but OPCD failed to investigate or take any corrective action. Instead, on September 25, 2023, OPCD terminated Ms. Duplessis under the alleged justification of budgetary constraints.

76. This justification was pretextual. No employees under the age of 40 were terminated. In fact, the role previously held by Ms. Duplessis was later restructured and refilled under a different title, without consideration of her qualifications or offering her the opportunity to apply.

77. Additionally, the only other African American woman over the age of 40 in a leadership position, Plaintiff's supervisor, Aliska Landry was also terminated on the same day, further demonstrating a pattern of targeting older employees for removal under false pretenses.

78. The circumstances surrounding Plaintiff's termination including the selection of significantly younger replacements, the absence of similar treatment toward younger employees, and the lack of a legitimate business reason demonstrate that her age was a motivating factor in the adverse employment actions taken against her.

79. Defendant's conduct constitutes unlawful age discrimination in violation of the ADEA, which prohibits employers from discharging or otherwise discriminating against individuals age 40 or older with respect to compensation, terms, conditions, or privileges of employment because of their age.

80. Ms. Duplessis was subjected to age discrimination. Ms. Duplessis alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional age discrimination in the terms and conditions of Plaintiff's employment under the Age Discrimination in Employment Act of 1967.

81.

In support of Ms. Duplessis' allegations of retaliation under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq., Ms. Duplessis further alleges:

16

82. Plaintiff Patrina Duplessis is an African American woman over the age of 40 who, at all relevant times, was employed by the Orleans Parish Communication District ("OPCD") as a Human Resources Generalist and Payroll Administrator. She consistently met or exceeded performance expectations and was qualified for her role.

83. In or around August 2023, Interim Executive Director Karl Fasold (Caucasian male) began exercising inappropriate control over the hiring process, openly expressing a desire to select candidates based on personal preference rather than merit or established procedures.

84. Concerned that Mr. Fasold's actions undermined fair and objective hiring practices and could result in discriminatory outcomes, Ms. Duplessis raised objections and advocated for compliance with OPCD's nondiscriminatory hiring protocols. Her opposition constituted protected activity under Title VII.

85. In response to her protected opposition, Mr. Fasold dismissed Ms. Duplessis's concerns, stating, "I can do whatever I want," and took no corrective action. Instead, he began to subject Ms. Duplessis to retaliatory and hostile treatment in the workplace.

86. Shortly thereafter, during a professional meeting on August 29, 2023, Mr. Fasold admitted that he felt "animosity" toward Ms. Duplessis, accused her of being part of an "in-crowd," and made other inappropriate and isolating remarks, all in retaliation for her prior protected conduct.

87. After Ms. Duplessis formally filed an internal grievance concerning Mr. Fasold's misconduct and hiring manipulation, the retaliatory treatment escalated. Mr. Fasold undermined the interview process for a senior position by preselecting Heather Hilliard (Caucasian female) declaring her the "better candidate" before interviews

were conducted, and directing staff not to document interview responses. This created a false appearance of fairness and transparency, which Ms. Duplessis had challenged.

88. Following Ms. Hilliard's appointment as Deputy Director, Ms. Duplessis was subjected to adverse changes in her job duties. She was removed from handling FMLA case management, excluded from the policy writing team, stripped of core HR responsibilities, and asked to return agency-issued credit cards, all without legitimate explanation. These actions were not imposed on similarly situated employees outside of her protected activity.

89. Ms. Duplessis again engaged in protected conduct by filing a racial discrimination and retaliation complaint with OPCD. The agency failed to investigate or intervene to address the situation.

90. Instead, on September 25, 2023, OPCD terminated Ms. Duplessis, along with Ms. Landry the only other African American woman over the age of 40 who also held a leadership role. The stated reason was budgetary constraints which were pretextual. OPCD did not terminate any younger or non-Black employees and soon refilled the position Ms. Duplessis had held under a different title, without offering her the opportunity to be rehired.

91. Additionally, Mr. Fasold later admitted to encouraging other employees to submit false complaints about Ms. Duplessis and expressed resentment over her past association with former African American leadership. These admissions further confirm his retaliatory motive.

92. The adverse actions taken against Ms. Duplessis including the stripping of duties, exclusion from decision-making processes, and her eventual termination, were in

direct response to her opposition to perceived discriminatory practices and her formal complaints. These acts constitute unlawful retaliation under Title VII.

93. Ms. Duplessis was subjected to retaliation. Ms. Duplessis alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional retaliation in the terms and conditions of Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq.

94.

In support of Ms. Duplessis' allegations of retaliation under 42 U.S.C. § 1981, Ms. Duplessis further alleges:

95. Plaintiff Patrina Duplessis is an African American woman who, at all relevant times, was employed by the Orleans Parish Communication District ("OPCD") as a Human Resources Generalist and Payroll Administrator. She consistently performed her job duties competently and maintained a strong record of performance.

96. In or around August 2023, OPCD's Interim Executive Director, Karl Fasold (Caucasian male) began exerting improper and subjective influence over the hiring process, signaling a willingness to select candidates based on personal preference rather than objective qualifications.

97. Ms. Duplessis opposed these practices and advocated fairness, transparency, and race-neutral hiring protocols. Her objections were made in good faith and sought to ensure that employment decisions at OPCD were free from racial bias, a right protected by 42 U.S.C. § 1981.

98. In response to Ms. Duplessis's protected opposition, Mr. Fasold dismissed her concerns, asserting, "I can do whatever I want," and began subjecting her to hostile

and retaliatory treatment.

99. Mr. Fasold's retaliatory conduct intensified following Ms. Duplessis's internal grievance against his manipulation of the hiring process. During an August 29, 2023 meeting, he admitted to harboring "animosity" toward her, accused her of being part of an "in-crowd," and made other remarks that reflected racialized animus and an effort to discredit her.

100. After Ms. Duplessis engaged in this protected activity, Mr. Fasold engineered the hiring of Heather Hilliard (Caucasian female) for a senior role, announcing her as "the better candidate" before any interviews occurred. He gave Ms. Hilliard a tour of the facility, showed her the office she would occupy, and directed staff not to document interview notes, demonstrating the process was a sham. Ms. Duplessis had recused herself from the process due to a conflict of interest but was still retaliated against for previously challenging Mr. Fasold's discriminatory practices.

101. Following Ms. Hilliard's appointment, Ms. Duplessis was stripped of critical job responsibilities, including oversight of FMLA cases and participation in the Policy Writing Team. She was also required to return her agency-issued credit cards. These adverse changes were not applied to similarly situated employees who had not engaged in protected activity.

102. Despite submitting a formal retaliation complaint, OPCD failed to investigate or address the misconduct. Instead, on September 25, 2023, OPCD terminated Ms. Duplessis, along with Ms. Landry, the only other African American woman over 40 who held a leadership role, citing alleged budgetary constraints.

103. The stated justification for termination was pretextual. No similarly situated non-

African American or younger employees were terminated, and Ms. Duplessis's position was later refilled under a different title without affording her the opportunity to return to the role.

104. Mr. Fasold's subsequent admission that he encouraged other employees to file false complaints about Ms. Duplessis and expressed animus regarding her affiliation with previous African American leadership further confirms his retaliatory motives.

105. The action of stripping Ms. Duplessis of responsibilities, isolating her professionally, undermining her authority, and ultimately terminating her employment were in direct retaliation for her opposition to discriminatory hiring practices and her exercise of rights secured by 42 U.S.C. § 1981.

106. Ms. Duplessis was subjected to retaliation. Ms. Duplessis alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional retaliation in the terms and conditions of Plaintiff's employment under 42 U.S.C. § 1981.

107.

In support of Ms. Landry's allegations of a hostile work environment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., Ms. Landry further alleges:

108. Aliska Landry, an African American woman over the age of forty and is protected under Title VII of the Civil Rights Act of 1964.

109. Throughout her tenure, Ms. Landry performed her duties with professionalism and competence, managing the agency's human resources operations, ensuring regulatory compliance, and supporting the overall workforce of OPCD.

110. Despite her performance, Ms. Landry was subjected to a racially hostile work

environment by OPCD leadership, particularly Interim Executive Director Karl Fasold (Caucasian male).

111. Beginning in or around mid-2023, Ms. Landry witnessed and experienced a pattern of discriminatory practices and exclusionary behavior by Mr. Fasold that created a workplace environment permeated with hostility, marginalization, and racial animus.

112. Ms. Landry was deliberately excluded from the hiring process for a newly created Deputy Director position, despite her role as HR Manager and her responsibility over all staffing matters.

113. Mr. Fasold directed her to draft the job description but then excluded her and all other HR staff from further participation, including the interview process, contrary to standard procedure.

114. Mr. Fasold unilaterally hired Heather Hilliard (Caucasian female) a personal friend with a prior legal settlement involving another public agency. His actions reflected favoritism, racial bias, and a disregard for established equal employment practices, reinforcing a sense of racial exclusion and unfairness in hiring.

115. During this time, Ms. Landry's ability to perform her job was further undermined. Mr. Fasold falsely claimed that HR Generalist Wilson, who is under 40 and not African American was handling the bulk of HR operations, despite her known performance deficiencies and limited duties.

116. Ms. Landry's actual contributions and leadership were dismissed and devalued. These actions systematically diminished her authority, isolated her from key decisions, and sent a clear message that her expertise and input were not respected or welcomed, especially in contrast to less qualified, non-African American colleagues

22

who were promoted and praised.

117.  Ms. Landry also experienced retaliatory hostility following her oversight of a racial complaint filed by her subordinate, Patrina Duplessis, against Mr. Fasold. After becoming aware of the complaint, Mr. Fasold intensified his efforts to marginalize Ms. Landry, and both she and Ms. Duplessis, African American women over 40, were abruptly terminated under the pretext of budget cuts, despite no prior discussion of such terminations in board meetings or among leadership. No employees under 40 were laid off, and no other departments, such as IT, were subject to similar scrutiny or reduction.

118.  The totality of the circumstances, racially biased hiring practices, the exclusion of African American women from decision-making, the dismantling of the HR department led by African American women, and the disparate treatment in promotional and disciplinary decisions created an objectively hostile work environment.

119.  The hostile work environment interfered with Ms. Landry's ability to perform her job, caused emotional distress, and culminated in her unlawful termination.

120.  OPCD's failure to prevent or correct the ongoing hostility, its tolerance of discriminatory practices by its executive leadership, and the adverse treatment of Ms. Landry because of her race and in retaliation for participating in protected activity violated Title VII of the Civil Rights Act of 1964.

121.  Ms. Landry was subjected to a hostile work environment. Ms. Landry alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact foster a hostile work environment under Title VII of the Civil Rights Act of 1964, as

amended and 42 U.S.C. § 2000e et seq.

122.

In support of Ms. Landry's allegations of a hostile work environment based on her race and ethnicity under 42 U.S.C. § 1981, Ms. Landry further alleges:

123. Aliska Landry is an African American woman over the age of forty. She was employed by the Orleans Parish Communication District ("OPCD") as the agency's Human Resources Manager and, as such, had a contractual relationship with her employer protected under 42 U.S.C. § 1981.

124. Throughout her employment, Ms. Landry performed her job responsibilities with professionalism, integrity, and competence. She managed OPCD's human resources operations, ensured compliance with employment laws and regulations, and supported the agency's workforce through comprehensive HR services.

125. Despite her qualifications and contributions, Ms. Landry was subjected to discriminatory treatment and a racially hostile work environment by OPCD leadership, particularly Interim Executive Director Karl Fasold (Caucasian male). This discriminatory conduct impaired her ability to enjoy the same contractual rights and benefits as similarly situated non-Black employees.

126. Beginning in or around mid-2023, Ms. Landry experienced a sustained pattern of racially discriminatory and exclusionary conduct by Mr. Fasold. His actions fostered a workplace environment marked by racial hostility, marginalization, and unequal treatment.

127. Although Ms. Landry, as HR Manager, was responsible for all staffing matters, she was deliberately excluded from the hiring process for a newly created Deputy Director

position. Her exclusion from these duties was unjustified and contrary to standard procedure, signaling a racial bias in access to decision-making authority.

128.  Mr. Fasold instructed Ms. Landry to draft the job description for the Deputy Director position, yet then excluded her and the rest of the HR department from participating in candidate screening, interviewing, or selection functions that were squarely within her contractual responsibilities.

129.  Mr. Fasold unilaterally hired Heather Hilliard (Caucasian female) a personal acquaintance with a history of legal disputes involving another public agency. His actions demonstrated racial favoritism and nepotism, which undermined the integrity of the hiring process and deprived Ms. Landry of her contractual right to equal participation in employment-related decision-making.

130.  At the same time, Mr. Fasold falsely asserted that HR Generalist Wilson, a younger non-African American employee, was fulfilling the majority of HR responsibilities despite Ms. Wilson's limited duties and poor performance record. This misrepresentation further eroded Ms. Landry's role and status in the organization.

131.  Ms. Landry's actual contributions and leadership were dismissed and devalued. Her exclusion from critical decisions and the elevation of less qualified, non-African American colleagues over her reflected a pattern of racial discrimination that denied her the full benefit and enjoyment of her employment contract.

132.  Ms. Landry also faced retaliation and increased hostility after she supervised and facilitated a formal racial complaint filed by her subordinate, Patrina Duplessis, against Mr. Fasold. Following Mr. Fasold's awareness of the complaint, he escalated his discriminatory treatment of Ms. Landry, ultimately resulting in the termination of

25

both Ms. Landry and Ms. Duplessis, African American women over forty, under the pretext of budgetary constraints.

133.    Notably, no employees under the age of forty were laid off, and no other departments were affected by similar budget cuts, suggesting that the terminations were not financially motivated but were, instead, racially and retaliatorily driven.

134.    The discriminatory exclusion from employment-related decisions, disparate treatment in job duties and authority, and pretextual termination of Ms. Landry created a racially hostile work environment and denied her the same rights to contract, performance, and enjoyment of employment benefits afforded to white employees.

135.    The hostile conditions materially interfered with Ms. Landry's ability to do her job, inflicted emotional distress, and ultimately resulted in the termination of her employment.

136.    OPCD's failure to intervene, its tolerance of discriminatory conduct by executive leadership, and the adverse actions taken against Ms. Landry based on her race and her involvement in protected activity constitute violations of 42 U.S.C. § 1981.

137.    Ms. Landry was subjected to a hostile work environment. Ms. Landry alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact foster a hostile work environment based on his race under 42 U.S.C. § 1981.

138.

In support of Ms. Landry's allegations of racial discrimination under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq., Ms. Landry further alleges:

139.    Aliska Landry is an African American woman over the age of forty who was employed by the Orleans Parish Communication District ("OPCD") as the agency's

Human Resources Manager. As a member of a protected class under Title VII of the Civil Rights Act of 1964, she was entitled to a work environment free from racial discrimination and adverse treatment based on race.

140. Throughout her employment, Ms. Landry carried out her duties with professionalism and diligence. She managed the full spectrum of human resources functions, ensured regulatory compliance, and provided crucial support to the agency's workforce.

141. Despite her qualifications, dedication, and performance, Ms. Landry was subjected to racially discriminatory treatment by OPCD leadership, particularly Interim Executive Director Karl Fasold (Caucasian male).

142. Beginning in or around mid-2023, Ms. Landry was exposed to ongoing discriminatory conduct that contributed to a racially charged and exclusionary environment. This included being marginalized from her professional responsibilities and excluded from processes traditionally under her purview.

143. Notably, Ms. Landry was deliberately excluded from participating in the hiring process for a newly created Deputy Director position, despite her role as HR Manager and responsibility over all staffing matters. This exclusion was unprecedented and unjustified.

144. Mr. Fasold directed Ms. Landry to draft the job description for the position but then excluded her and all HR staff from the interview process and hiring decision, contrary to standard hiring procedures that typically involved HR input at every stage.

145. Mr. Fasold unilaterally selected Heather Hilliard (Caucasian female) a personal friend, to fill the role. His failure to include HR, combined with his personal

connection to the candidate, reflected a departure from standard practice and revealed a discriminatory preference for non-Black candidates.

146. Concurrently, Mr. Fasold falsely asserted that HR Generalist Wilson, a younger, non-African American employee, was effectively managing the department's HR functions, despite her limited duties and performance issues. This misrepresentation was used to justify the eventual dismantling of the HR department led by Ms. Landry.

147. Ms. Landry's extensive experience and leadership were disregarded and undermined. She was systematically excluded from decision-making, denied professional recognition, and overlooked in favor of less experienced, non-African American staff, all of which signaled discriminatory intent.

148. The discriminatory treatment intensified after Ms. Landry, in her supervisory capacity, facilitated the handling of a whistleblower complaint filed by her subordinate, Patrina Duplessis, against Mr. Fasold. Both women, African American and over the age of forty, were terminated shortly thereafter under the alleged justification of budget cuts.

149. No similarly situated employees under the age of forty were laid off, and no other departments such as IT were subject to budget-related reductions. This selective targeting of African American women strongly suggests race-based and retaliatory motives.

150. The cumulative effect of these actions including racially biased hiring practices, the exclusion of African American employees from significant decision-making, and the ultimate elimination of positions held by African American women, constitutes unlawful race discrimination in violation of Title VII.

28

151. The discriminatory treatment materially affected the terms, conditions, and privileges of Ms. Landry's employment, caused her significant emotional distress, and ultimately resulted in her unjust termination.

152. OPCD's failure to prevent or address the racially discriminatory conduct by its executive leadership, combined with the adverse actions taken against Ms. Landry because of her race, constitute violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

153. As a direct result of the discriminatory practices described above, Ms. Landry has suffered economic loss, emotional harm, reputational damage, and the loss of her employment.

154. Ms. Landry was subjected to racial discrimination. Ms. Landry alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional racial discrimination in the terms and conditions of Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq.

155.

In support of Ms. Landry's allegations of racial discrimination under 42 U.S.C. § 1981, Ms. Landry further alleges:

156. Ms. Landry is a member of a protected class, African American.

157. Aliska Landry is an African American woman over the age of forty who was employed by the Orleans Parish Communication District ("OPCD") as the agency's Human Resources Manager. As an African American employee, she is entitled to the full and equal benefit of all laws and proceedings for the security of person and

property, including the right to make and enforce contracts, under 42 U.S.C. § 1981.

158. Throughout her employment, Ms. Landry performed her duties with skill, integrity, and professionalism. She managed OPCD's human resources operations, maintained compliance with state and federal laws, and provided vital administrative support for the agency's workforce.

159. Despite her competence and contributions, OPCD leadership, particularly Interim Executive Director Karl Fasold (Caucasian male) who treated Ms. Landry differently and less favorably than similarly situated white employees in matters concerning the terms and conditions of her employment, in violation of her rights under § 1981.

160. Beginning in or around mid-2023, Ms. Landry experienced escalating racial discrimination, including being excluded from key employment-related decisions, denied opportunities typically afforded to her position, and stripped of authority without legitimate justification.

161. One such instance involved the creation of a new Deputy Director position. Although Ms. Landry, as HR Manager, was directed to draft the job description, she was then deliberately excluded from the interview process and the hiring decision, in direct contradiction of standard procedures that required HR oversight.

162. Mr. Fasold proceeded to unilaterally appoint Heather Hilliard (Caucasian female) a personal friend, to the role, bypassing normal protocol and intentionally excluding Ms. Landry, despite her managerial role and contractual responsibilities in staffing decisions. These actions reflected racial bias and a racially discriminatory disregard for Ms. Landry's contractual rights and job duties.

163. In addition, Ms. Landry's authority and role within the organization were steadily

eroded. Mr. Fasold falsely claimed that HR Generalist Wilson, a younger, non-African American employee with limited experience and a history of performance issues, was effectively handling all HR responsibilities. This assertion was used to justify dismantling the HR department led by Ms. Landry.

164. Ms. Landry's actual contributions were dismissed and her position marginalized, while less experienced non-Black employees were promoted, retained, or praised, despite known deficiencies. These actions demonstrated a pattern of racially motivated employment decisions in violation of 42 U.S.C. § 1981.

165. The discriminatory treatment intensified after Ms. Landry oversaw the administrative handling of a racial complaint submitted by her subordinate, Patrina Duplessis, against Mr. Fasold. Following this protected activity, both Ms. Landry and Ms. Duplessis, Black women over the age of forty, were abruptly terminated under the false pretense of budgetary cuts.

166. No white employees or employees under forty were terminated, and no other departments, such as IT, faced similar cuts. The decision to terminate only African American women in leadership, particularly those involved in protected activity or who challenged the authority of white leadership, demonstrates race-based discriminatory intent.

167. These actions created racially biased hiring practices, exclusion from employment-related decisions, denial of equal treatment in the terms and conditions of employment, and race-based termination, amount to a violation of Ms. Landry's federally protected rights under 42 U.S.C. § 1981.

168. OPCD's leadership, through its pattern of conduct, denied Ms. Landry the same

rights to make and enforce contracts, to the full and equal benefit of all laws, and to equal employment conditions as white employees.

169. As a direct result of the racially discriminatory conduct and violation of 42 U.S.C. § 1981, Ms. Landry suffered significant harm, including economic loss, reputational damage, emotional distress, and the termination of her employment.

170. Ms. Landry was subjected to racial discrimination. Ms. Landry alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional racial discrimination in the terms and conditions of Plaintiff's employment under 42 U.S.C. § 1981.

171.

In support of Ms. Landry's allegations of age discrimination under the Age Discrimination in Employment Act, Ms. Landry further alleges:

172. Aliska Landry is a woman over the age of forty who was employed by the Orleans Parish Communication District ("OPCD") as its Human Resources Manager. As an employee over forty, Ms. Landry is protected under the Age Discrimination in Employment Act ("ADEA").

173. Throughout her employment, Ms. Landry demonstrated professionalism, competence, and leadership. She was responsible for managing the agency's human resources operations, ensuring regulatory compliance, and supporting OPCD's workforce.

174. Despite her experience and strong performance, Ms. Landry was subjected to adverse treatment by OPCD's leadership, particularly Interim Executive Director Karl Fasold (Caucasian male), that reflected discriminatory bias based on age.

175. Beginning in or around mid-2023, Ms. Landry was increasingly marginalized and excluded from key employment decisions. She was denied the opportunity to fully participate in the hiring process for a newly created Deputy Director position, despite her role and responsibilities over all staffing matters.

176. Mr. Fasold instructed Ms. Landry to draft the job description for the position but then excluded her and the rest of the HR staff over the age of 40 from further participation, including in the interview and selection process. This exclusion deviated from OPCD's standard practices and undermined Ms. Landry's role as HR Manager.

177. Concurrently, Mr. Fasold falsely claimed that HR Generalist Wilson, who is under the age of 40 and has a history of performance deficiencies, was performing the majority of HR duties, minimizing Ms. Landry's contributions and falsely portraying her as dispensable.

178. Ms. Landry's role was systematically devalued, her authority diminished, and she was excluded from decisions related to staffing, budgeting, and department strategy, while younger, less experienced staff were given greater responsibility and recognition.

179. In addition to this disparate treatment, Ms. Landry was further targeted after overseeing a racial discrimination complaint filed by her subordinate, Patrina Duplessis, who was also over the age of 40. Following this incident, both Ms. Landry and Ms. Duplessis were abruptly terminated under the guise of budget cuts.

180. The alleged budget cuts were not discussed in board meetings, and the layoffs disproportionately impacted only the older employees. No employees under the age of 40 were terminated, and no younger employees in departments such as IT were

subjected to similar reductions.

181.    The pattern of exclusion, diminished responsibilities, and the termination of only employees over 40, particularly African American women in leadership, demonstrates discriminatory animus toward older workers in violation of the ADEA.

182.    As a result of OPCD's conduct, Ms. Landry suffered lost wages and benefits, reputational harm, and significant emotional distress.

183.    OPCD's failure to treat Ms. Landry equally in terms and conditions of employment, its preference for younger employees, and its decision to terminate her while retaining younger, less qualified staff violated the Age Discrimination in Employment Act.

184.    Ms. Landry was subjected to age discrimination. Ms. Landry alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional age discrimination in the terms and conditions of Plaintiff's employment under the Age Discrimination in Employment Act of 1967.

185.

In support of Ms. Landry's allegations of retaliation under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq., Ms. Landry further alleges:

186.    Aliska Landry is an African American woman over the age of forty who began her employment with the Orleans Parish Communication District ("OPCD") on or about December 17, 2018. In her role, Ms. Landry was responsible for the oversight and administration of the agency's human resources functions, including compliance with employment laws, equal opportunity practices, and workplace policies.

187.    Throughout her employment, Ms. Landry performed her duties with competence and professionalism and was known as a dependable and effective leader in her

34

department.

188.    In or around August 2023, Ms. Landry's subordinate, Patrina Duplessis, who is also an African American woman over the age of forty, submitted a formal complaint to OPCD's leadership alleging discriminatory conduct by Interim Executive Director Karl Fasold (Caucasian male). The complaint included allegations implicating Mr. Fasold in racial discrimination and hostile behavior in violation of Title VII.

189.    As Ms. Duplessis's direct supervisor and the agency's Human Resources Manager, Ms. Landry had a professional duty to facilitate and oversee the proper administrative handling of the complaint in accordance with OPCD's internal policies and applicable federal law.

190.    Ms. Landry promptly initiated the appropriate procedures to ensure the complaint would be reviewed by Board Chairman John Thomas, as scheduled, within a 30-day period. She took no adverse action against Ms. Duplessis and conducted her role with integrity and neutrality.

191.    However, after Mr. Fasold became aware of the complaint and of Ms. Landry's role in processing it, he began to retaliate against her. This retaliation took the form of professional marginalization, exclusion from decision-making processes, and the undermining of her authority in the HR department.

192.    Specifically, Ms. Landry was deliberately excluded from the hiring process for a newly created Deputy Director position, even though she was directed to draft the job description and HR was completely sidelined from interviews and selection procedures. These actions contradicted standard hiring practices at OPCD, which would have required HR involvement, particularly for such a senior role.

193. Mr. Fasold, who hand-selected his personal friend Heather Hilliard (Caucasian female) for the Deputy Director position, failed to submit interview records to HR or consult with Ms. Landry during the process. His exclusionary actions were not only irregular and unprofessional, but also retaliatory, designed to diminish Ms. Landry's influence and visibility within the agency.

194. Around the same time, Mr. Fasold falsely claimed that HR Generalist Wilson, a younger, non-African American employee, was handling the majority of HR operations, despite her known performance deficiencies and limited role. In reality, Ms. Landry continued to manage the bulk of HR responsibilities, but her contributions were increasingly minimized and discredited by leadership.

195. Ms. Landry's professional authority was systematically dismantled. Her work was devalued, she was excluded from strategic meetings and staffing decisions, and she was isolated from her team, all of which culminated in the abrupt termination of her employment on September 25, 2023.

196. Ms. Landry's termination was justified by OPCD as a budgetary measure; however, this explanation was pretextual. No prior discussions of budgetary layoffs had occurred in executive meetings, and no employees under the age of forty were impacted by layoffs. The only individuals terminated were Ms. Landry and Ms. Duplessis, the same two African American women over forty who had either filed or processed a formal racial complaint against the Interim Executive Director.

197. No other departments were impacted by budget cuts, and no non-complaining employees were subject to similar scrutiny or adverse action. The targeted nature of the terminations, coupled with the timing, just weeks after the racial complaint,

strongly indicates that the stated reasons were pretext for unlawful retaliation.

198. Ms. Landry's participation in the protected activity of handling and overseeing a discrimination complaint filed by another employee constitutes opposition to unlawful employment practices under Title VII.

199. Her subsequent exclusion from core duties, denial of participation in hiring decisions, reputational damage, and ultimate termination constitute adverse employment actions taken in retaliation for her protected activity.

200. OPCD, through the actions of its leadership, particularly Mr. Fasold, retaliated against Ms. Landry in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), which prohibits employers from discriminating against an employee because she opposed practices made unlawful under the statute or participated in an investigation, proceeding, or hearing under Title VII.

201. As a result of this unlawful retaliation, Ms. Landry suffered financial harm, emotional distress, loss of professional reputation, and other damages, for which she is entitled to legal and equitable relief.

202. Ms. Landry was subjected to retaliation. Ms. Landry alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional retaliation in the terms and conditions of Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq.

203.

In support of Ms. Landry's allegations of retaliation under 42 U.S.C. § 1981, Ms. Landry further alleges:

204. Aliska Landry is an African American woman over the age of forty who was

37

employed by the Orleans Parish Communication District ("OPCD") as its Human Resources Manager.

205. During her tenure, Ms. Landry performed her duties with competence and professionalism, managing OPCD's human resources functions, including compliance with employment policies, personnel matters, and equal opportunity procedures.

206. In or around August 2023, Ms. Landry's subordinate, Patrina Duplessis, also an African American woman over forty, filed an internal complaint of racial discrimination against OPCD's Interim Executive Director, Karl Fasold (Caucasian male).

207. As the Human Resources Manager, Ms. Landry carried out her professional responsibilities by processing and elevating the complaint in accordance with established internal procedures and federal requirements, including forwarding the complaint to Board Chairman John Thomas for review within the agency's 30-day window.

208. After learning that Ms. Duplessis had filed a racial discrimination complaint and that Ms. Landry had overseen the complaint process, Mr. Fasold began to retaliate against Ms. Landry for her involvement in protected activity.

209. Mr. Fasold retaliated against Ms. Landry by deliberately excluding her from key decision-making processes, diminishing her professional authority, and isolating her from her core job duties.

210. For example, when OPCD initiated the hiring of a new Deputy Director, Mr. Fasold directed Ms. Landry to draft the job description but excluded her and all other HR staff from the interview and selection process, contrary to standard hiring practices.

38

211. Mr. Fasold ultimately selected his personal friend Heather Hilliard (Caucasian female) who has a history of legal disputes involving a prior public employer, for the Deputy Director role. This selection occurred without HR participation and with no documented interview process shared with Ms. Landry's office.

212. Additionally, Mr. Fasold falsely asserted that HR Generalist Wilson, a younger and non-African American employee, was performing the majority of HR work, despite Wilson's known performance deficiencies. These misrepresentations were made to further undermine Ms. Landry's credibility and justify sidelining her from essential functions.

213. Following Ms. Landry's involvement in processing the internal racial discrimination complaint, Mr. Fasold's efforts to marginalize her escalated. He stripped her of responsibilities, undermined her authority, and damaged her professional standing within the organization.

214. Just weeks after the filing of the discrimination complaint and Ms. Landry's protected participation in its administration, both Ms. Landry and Ms. Duplessis were abruptly terminated under the purported justification of "budget cuts."

215. However, no discussions of budget reductions had been held in executive or board meetings. No similarly situated employees under forty or outside of the protected class were laid off. No other departments, including IT and operations, were subject to reductions. The terminations were narrowly and selectively applied to Ms. Landry and Ms. Duplessis, two African American women over forty who were involved in opposing race-based discrimination.

216. The timing, selective targeting, and absence of legitimate non-retaliatory

explanations strongly support the inference that Ms. Landry's termination was retaliatory in nature and a direct response to her protected activity, namely, her opposition to racial discrimination in violation of 42 U.S.C. § 1981.

217.    Section 1981 prohibits not only intentional racial discrimination but also retaliation against individuals who oppose or report such discrimination. Ms. Landry's efforts to ensure fair treatment of an African American subordinate who alleged racial bias, and her own efforts to resist exclusionary practices, fall squarely within the scope of protected activity under the statute.

218.    OPCD's actions including the exclusion from decision-making, denial of participation in the hiring process, public undermining of her authority, and ultimate termination, constitute unlawful retaliation for Ms. Landry's engagement in activity protected by 42 U.S.C. § 1981.

219.    Ms. Landry was subjected to retaliation. Ms. Landry alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional retaliation in the terms and conditions of Plaintiff's employment under 42 U.S.C. § 1981.

**CAUSES OF ACTION**

**AS FOR THE FIRST CAUSE OF ACTION AGAINST
DEFENDANT FOR A VIOLATION OF
Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e *et seq.*
(Hostile Work Environment)**

220.

Plaintiffs, Patrina Duplessis and Aliska Landry state a cause of action for a hostile work environment because of their protected activities with the defendant as they are protected under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. §

40

2000e et seq. Plaintiffs repeat and re-allege the allegations contained in Paragraphs 11 and 107 as if fully set forth herein.

221.

Plaintiffs Patrina Duplessis and Aliska Landry are African American women over the age of forty and are members of a protected class under Title VII of the Civil Rights Act of 1964.

222.

Throughout their employment at the Orleans Parish Communication District ("OPCD"), Plaintiffs performed their duties with competence and professionalism, consistently meeting or exceeding the expectations of their roles.

223.

Despite their job performance, Plaintiffs were subjected to a pervasive and severe hostile work environment based on their race and age, created and perpetuated by OPCD leadership, particularly Interim Executive Director Karl Fasold (Caucasian male).

224.

Beginning in or around mid-2023, Mr. Fasold engaged in conduct that fostered a racially discriminatory and hostile workplace, including but not limited to:

a) Making dismissive and authoritarian remarks regarding hiring practices, including telling Ms. Duplessis, "I can do whatever I want," when she advocated for fair and objective hiring;

b) Expressing "animosity" toward Ms. Duplessis, falsely accusing her of being part of an "in-crowd," and making personal, inappropriate comments in professional settings;

41

c) Excluding both Plaintiffs from key hiring processes despite their HR leadership roles;

d) Prematurely selecting and appointing Heather Hilliard, a less qualified white candidate and personal acquaintance of Mr. Fasold, to a senior position before the formal hiring process was complete;

e) Disregarding standard HR protocols and undermining the professional authority of both Plaintiffs;

f) Disseminating false narratives to discredit Ms. Landry's leadership and minimize her contributions in favor of less experienced, non-African American employees;

g) Subjecting Ms. Duplessis to retaliatory acts such as removal of core responsibilities, exclusion from HR functions, and forced return of agency property after she opposed discriminatory practices;

h) Encouraging staff to file false complaints about Ms. Duplessis and fostering a culture of retaliation and racial animus;

i) Abruptly terminating both Plaintiffs under the pretext of budgetary constraints shortly after protected activity, despite the absence of similar cuts to departments led by non-African American employees or any evidence of genuine financial necessity.

225.

The conduct described above was unwelcome, based on Plaintiffs' race and age, and sufficiently severe and pervasive to alter the conditions of their employment and create an abusive, intimidating, and hostile working environment.

226.

Plaintiffs reasonably believed the workplace environment was hostile, discriminatory, and intolerable, and any reasonable person in Plaintiffs' position would have perceived the environment as hostile or abusive.

227.

OPCD knew or should have known about the discriminatory and hostile work environment but failed to take prompt or adequate remedial action. Instead, OPCD ratified and reinforced the discriminatory conduct by terminating Plaintiffs for pretextual reasons.

228.

As a direct and proximate result of the hostile work environment and OPCD's unlawful conduct, Plaintiffs have suffered and continue to suffer loss of income, damage to professional reputation, emotional distress, humiliation, and other non-economic damages.

229.

The conduct of OPCD was willful, intentional, and in reckless disregard of Plaintiffs' rights under Title VII.

230.

Plaintiffs' request for relief are set forth below.

**AS FOR THE SECOND CAUSE OF ACTION AGAINST
DEFENDANT FOR A VIOLATION OF
42 U.S.C. § 1981
(Hostile Work Environment)**

231.

Plaintiffs, Patrina Duplessis and Aliska Landry state a cause of action for hostile work environment because of their protected activities with the defendant as they are protected under 42 U.S.C. § 1981. Plaintiffs repeat and re-allege the allegations contained

in Paragraphs 23 and 122 as if fully set forth herein.

232.

At all relevant times, Plaintiffs Patrina Duplessis and Aliska Landry, both African American women over the age of forty, were employed by Defendant Orleans Parish Communication District ("OPCD") and maintained contractual relationships with their employer as protected under 42 U.S.C. § 1981.

233.

Plaintiffs performed their job duties competently, maintained strong performance records, and were qualified for the positions they held. Despite their qualifications and records of performance, Plaintiffs were subjected to a racially hostile work environment created and perpetuated by Interim Executive Director Karl Fasold, a white male, and condoned by OPCD.

234.

As to Ms. Duplessis, the hostile environment included, but was not limited to:

a) Being subjected to dismissive and authoritarian treatment after advocating for equitable hiring practices, including Mr. Fasold stating, "I can do whatever I want" in response to her objections;

b) Being accused of belonging to an "in crowd" and having "animosity" directed toward her by Mr. Fasold, statements with racial undertones designed to marginalize her;

c) Being stripped of significant job responsibilities following her internal grievance;

d) Observing the manipulation of the hiring process in favor of white candidates, particularly the premature selection and appointment of Heather Hilliard, a white

44

applicant, before interviews had concluded;

e)  Being terminated alongside another African American woman under a pretext of budgetary concerns, despite her role being later refilled under a different title and no similar layoffs affecting white or younger employees.

235.

As to Ms. Landry, the hostile environment included, but was not limited to:

a)  Being deliberately excluded from key hiring processes that were central to her role as Human Resources Manager;

b)  Having her duties reassigned or minimized in favor of less qualified, non-African American employees;

c)  Witnessing the unilateral appointment of Ms. Hilliard, a white acquaintance of Mr. Fasold, without legitimate process or input from HR;

d)  Enduring false narratives about her department's performance and being undermined professionally;

e)  Facing increased hostility after facilitating a formal complaint of racial discrimination by Ms. Duplessis, culminating in her own termination under similarly pretextual budgetary grounds, despite the absence of layoffs in other departments or among non-Black employees.

236.

The conduct described above was severe and pervasive, creating a workplace atmosphere that was intimidating, degrading, and offensive to Plaintiffs because of their race and ethnicity. Plaintiffs were isolated, excluded from key decision-making, and subjected to retaliation and public undermining, all of which materially affected the terms

45

and conditions of their employment.

237.

Defendant's failure to prevent or correct the discriminatory behavior, and its tolerance of racially hostile acts by senior leadership, constitutes a violation of Plaintiffs' rights to make and enforce contracts under 42 U.S.C. § 1981.

238.

The hostile work environment endured by Plaintiffs was motivated by racial animus and designed to exclude them from the same privileges and protections afforded to white employees at OPCD.

239.

As a direct and proximate result of Defendant's conduct, Plaintiffs suffered emotional distress, mental anguish, reputational harm, loss of professional opportunities, and ultimately the termination of their employment.

240.

Plaintiffs seek all remedies available under 42 U.S.C. § 1981, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, and all other relief deemed just and proper by the Court.

241.

Plaintiffs' request for relief are set forth below.

**AS FOR THE THIRD CAUSE OF ACTION AGAINST
DEFENDANT FOR A VIOLATION OF
Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e *et seq.*
(Racial Discrimination)**

242.

Plaintiffs, Patrina Duplessis and Aliska Landry state a cause of action for racial

46

discrimination because of their protected activities with the defendant as they are protected under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq. Plaintiffs repeat and re-allege the allegations contained in Paragraphs 36 and 138 as if fully set forth herein.

243.

At all relevant times, Plaintiffs Patrina Duplessis and Aliska Landry were African American women and, therefore, members of a protected class under Title VII of the Civil Rights Act of 1964.

244.

Plaintiffs were each employed in leadership roles by Defendant OPCD and performed their respective duties diligently, professionally, and competently throughout their tenure.

245.

Despite their qualifications and records of satisfactory performance, Plaintiffs were subjected to disparate treatment, hostile working conditions, and adverse employment actions by Defendant OPCD on the basis of their race.

246.

Beginning in or around mid-2023, OPCD's Interim Executive Director, Karl Fasold, a Caucasian male, initiated and perpetuated discriminatory employment practices that disproportionately affected African American employees, including the Plaintiffs.

247.

Mr. Fasold improperly influenced the hiring process by disregarding established protocols, excluding HR staff (including Plaintiffs) from recruitment decisions, and selecting white candidates, including personal associates, for leadership roles without legitimate justification.

47

248.

Ms. Duplessis objected to Mr. Fasold's racially biased hiring practices and advocated for fair and lawful procedures. In retaliation, she was subjected to increasing hostility, removed from key job responsibilities, and ultimately terminated on September 25, 2023, under the pretext of budgetary concerns. Her position was later refilled under a different title by a non-African American individual.

249.

Similarly, Ms. Landry, who had served as the Human Resources Manager and was responsible for overseeing staffing and compliance was excluded from hiring decisions related to the Deputy Director position, despite her central role in the agency's HR operations. Mr. Fasold selected a white personal acquaintance for the position and sidelined Ms. Landry in violation of OPCD's normal procedures.

250.

Both Plaintiffs were targeted and subjected to adverse actions including job duty reductions, exclusion from decision-making, and eventual termination after raising or facilitating complaints of discriminatory conduct. Their terminations occurred shortly after Ms. Duplessis filed an internal complaint against Mr. Fasold and Ms. Landry assisted with its processing.

251.

No similarly situated non-African American or significantly younger employees were subjected to the same adverse treatment. In fact, less qualified, non-African American staff were retained and favored over Plaintiffs despite their inferior performance and experience.

252.

The reasons proffered for Plaintiffs' terminations, namely, alleged budget constraints were

false and pretextual. Defendant OPCD did not implement similar layoffs in other departments and subsequently refilled one of the Plaintiffs' roles, further evidence of discriminatory intent.

253.

Additionally, Mr. Fasold admitted to encouraging staff to submit false complaints against Ms. Duplessis and expressed resentment toward her professional association with prior African American leadership, revealing a pattern of racial animus.

254.

Defendant OPCD failed to take prompt or effective remedial action to investigate or stop the ongoing racial discrimination or to prevent its recurrence, thereby ratifying and perpetuating the discriminatory conduct.

255.

As a result of Defendant's racially discriminatory actions, both Plaintiffs were subjected to a hostile work environment, loss of professional opportunities, unjustified job reassignments, reputational harm, and wrongful termination.

256.

Defendant's actions constitute unlawful racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

257.

As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered and will continue to suffer damages, including but not limited to lost wages, diminished future earning capacity, emotional distress, mental anguish, loss of reputation, and other compensable injuries.

258.

Plaintiffs' requests for relief are set forth below.

49

**AS FOR THE FOURTH CAUSE OF ACTION AGAINST**
**DEFENDANT FOR A VIOLATION OF**
**42 U.S.C. § 1981**
**(Racial Discrimination)**

259.

Plaintiffs, Patrina Duplessis and Aliska Landry state a cause of action for racial discrimination because of their protected activities with the defendant as they are protected under 42 U.S.C. § 1981. Plaintiffs repeat and re-allege the allegations contained in Paragraphs 52 and 155 as if fully set forth herein.

260.

Plaintiffs Patrina Duplessis and Aliska Landry are African American women and members of a protected class under 42 U.S.C. § 1981.

261.

Section 1981 guarantees all persons in the United States the same right to make and enforce contracts, to the full and equal benefit of all laws, and to the enjoyment of all benefits, privileges, terms, and conditions of employment as are enjoyed by white citizens.

262.

At all relevant times, Plaintiffs were employed by Defendant Orleans Parish Communication District ("OPCD") in professional roles for which they were qualified and in which they consistently met or exceeded legitimate performance expectations.

263.

Defendant OPCD, acting through Interim Executive Director Karl Fasold and other agents, intentionally and unlawfully discriminated against Plaintiffs on the basis of race in violation of 42 U.S.C. § 1981.

264.

50

With respect to Ms. Duplessis, the discriminatory actions included, but were not limited to:

a) Denial of equal participation in employment decisions and benefits of employment.

b) Retaliation for objecting to race-based favoritism in the hiring process.

c) Exclusion from critical employment functions after raising complaints of discrimination.

d) Targeting her for racial hostility and public disparagement.

e) Stripping of job responsibilities without legitimate justification.

f) Termination of employment under a false pretext of budget constraints, while white employees were not similarly affected.

g) Refusal to rehire or consider her for equivalent roles despite her qualifications.

265.

With respect to Ms. Landry, the discriminatory actions included, but were not limited to:

a) Exclusion from hiring decisions despite her role as Human Resources Manager.

b) Disregard of her authority and job functions in favor of less experienced, non-Black employees.

c) Marginalization and false statements aimed at undermining her leadership and performance.

d) Retaliation for her involvement in handling Ms. Duplessis's internal racial complaint.

e) Termination of employment under a pretextual budget justification that did not apply to similarly situated white or younger employees.

266.

Defendant's conduct was intentional, malicious, willful, and in reckless disregard of Plaintiffs' federally protected rights. It created and perpetuated a racially discriminatory work

51

environment that impaired Plaintiffs' rights to make and enforce employment contracts on equal footing with white employees.

267.

The adverse actions suffered by Plaintiffs were not based on any legitimate business justification but rather were motivated by discriminatory animus and a desire to maintain racial preference within the agency's leadership and decision-making ranks.

268.

As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs suffered and continue to suffer economic harm, including loss of income and benefits; emotional distress; reputational damage; and other consequential and compensatory damages.

269.

Plaintiffs' requests for relief are set forth below.

**AS FOR THE FIFTH CAUSE OF ACTION AGAINST
DEFENDANT FOR A VIOLATION OF
Age Discrimination in Employment Act of 1967
(Age Discrimination)**

270.

Plaintiffs, Patrina Duplessis and Aliska Landry state a cause of age discrimination because of their protected activities with the defendant as they are protected under the Age Discrimination in Employment Act of 1967. Plaintiffs repeat and re-allege the allegations contained in Paragraphs 66 and 171 as if fully set forth herein.

271.

At all relevant times, Plaintiffs Duplessis and Landry were over the age of forty (40) and were, therefore, members of the protected class under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.

52

272.

Plaintiff Patrina Duplessis was employed by the Orleans Parish Communication District ("OPCD") as a Human Resources Generalist and Payroll Administrator. Plaintiff Aliska Landry was employed by OPCD as its Human Resources Manager. Both Plaintiffs possessed the necessary qualifications for their respective positions and performed their job duties in a competent and professional manner.

273.

Despite their strong job performance and qualifications, Plaintiffs were subjected to adverse employment actions by OPCD, including exclusion from key responsibilities, marginalization, diminished authority, and ultimately termination.

274.

Beginning in or around mid-2023, Interim Executive Director Karl Fasold exercised improper influence over hiring and personnel decisions, frequently bypassing standard procedures in favor of selecting significantly younger, less qualified individuals for leadership roles.

275.

Plaintiff Duplessis objected to Mr. Fasold's disregard of objective hiring standards and his preferential treatment of younger candidates. In response, she was subjected to hostile and retaliatory treatment, including disparaging comments, professional isolation, and removal of her job duties.

276.

Mr. Fasold preselected a significantly younger candidate, Heather Hilliard, for a newly created leadership position without conducting a legitimate or fair selection process, despite the presence of more experienced and qualified candidates.

277.

Following the appointment of Ms. Hilliard, Plaintiff Duplessis was systematically excluded from major HR functions, decision-making processes, and stripped of core responsibilities without justification.

278.

Plaintiff Duplessis filed an internal complaint regarding discriminatory conduct. OPCD failed to investigate or take corrective action and subsequently terminated her employment on September 25, 2023, citing alleged budgetary constraints.

279.

Plaintiff Landry, the only other African American woman over the age of 40 in a leadership role, was also terminated on the same day. Prior to her termination, Ms. Landry was increasingly marginalized, stripped of authority, and excluded from hiring and strategic decisions, including the hiring process for the new Deputy Director position, despite her HR leadership role.

280.

Both Plaintiffs were replaced, or their roles were restructured in a manner that favored younger, less experienced employees. No employees under the age of 40 were subjected to similar adverse employment actions or included in the alleged layoffs.

281.

The purported justification for Plaintiffs' terminations, budgetary constraints, was pretextual. The lack of transparency in the layoff process, the timing of the terminations, and the subsequent retention and promotion of younger staff demonstrate discriminatory animus on the basis of age.

282.

Defendant's actions constitute unlawful age discrimination in violation of the ADEA, which prohibits an employer from discharging or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment because of age.

283.

As a direct and proximate result of OPCD's discriminatory conduct, Plaintiffs have suffered damages, including lost wages, lost employment benefits, emotional distress, reputational harm, and other compensable injuries.

284.

Defendant acted willfully and with reckless disregard for Plaintiffs' rights under the ADEA, entitling Plaintiffs to liquidated damages pursuant to 29 U.S.C. § 626(b).

285.

Plaintiffs' requests for relief are set forth below.

**AS FOR THE SIXTH CAUSE OF ACTION AGAINST
DEFENDANT FOR A VIOLATION OF
Title VII of the Civil rights Act of 1964, as amended and 42 U.S.C. § 2000e *et seq.*
(Retaliation)**

286.

Plaintiffs, Patrina Duplessis and Aliska Landry state a cause of action for retaliation because of their protected activities with the defendant as they are protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiffs repeat and re-allege the allegations contained in Paragraphs 81 and 185 as if fully set forth herein.

287.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), prohibits employers from retaliating against employees who oppose unlawful employment practices or participate in an investigation, proceeding, or hearing under Title VII

55

**Retaliation Against Plaintiff Patrina Duplessis:**

288.

Plaintiff Patrina Duplessis is an African American woman over the age of forty who, at all relevant times, was employed by the Orleans Parish Communication District ("OPCD") as a Human Resources Generalist and Payroll Administrator. She was qualified for her position and consistently met or exceeded performance expectations.

289.

In or around August 2023, Ms. Duplessis engaged in protected activity under Title VII when she objected to Interim Executive Director Karl Fasold's discriminatory manipulation of the hiring process and advocated for adherence to OPCD's nondiscriminatory policies and procedures.

290.

In response, Mr. Fasold dismissed Ms. Duplessis's objections and began subjecting her to retaliatory conduct, including public expressions of animosity, workplace isolation, and hostile remarks during meetings.

291.

After Ms. Duplessis filed a formal internal grievance regarding Mr. Fasold's discriminatory conduct, the retaliation escalated. She was stripped of key job responsibilities, excluded from policy initiatives, and subjected to adverse changes in her role that were not imposed on similarly situated employees outside of her protected activity.

292.

Ms. Duplessis subsequently filed an additional internal complaint alleging discrimination and retaliation. OPCD failed to conduct a meaningful investigation or take corrective action.

293.

56

Instead, on September 25, 2023, OPCD terminated Ms. Duplessis's employment under the pretext of budgetary concerns. This explanation was false, as OPCD soon refilled her position under a different title without offering her reemployment, and did not terminate similarly situated non-Black or younger employees.

294.

Additionally, Mr. Fasold admitted to encouraging others to file false complaints against Ms. Duplessis and expressed hostility toward her prior association with former African American leadership, further evidencing retaliatory animus.

295.

These retaliatory actions including changes to job duties, exclusion from decision-making, and termination were causally connected to Ms. Duplessis's protected conduct and constitute unlawful retaliation in violation of Title VII.

**Retaliation Against Plaintiff Aliska Landry:**

296.

Plaintiff Aliska Landry is an African American woman over the age of forty who began her employment with OPCD on or about December 17, 2018. At all times, Ms. Landry performed her role with competence and professionalism and served as a respected leader within OPCD's human resources department.

297.

In or around August 2023, Ms. Landry's subordinate, Ms. Duplessis, submitted a formal complaint alleging discriminatory conduct by Interim Executive Director Karl Fasold.

298.

As Human Resources Manager, Ms. Landry engaged in protected activity under Title VII by processing and overseeing the internal handling of the discrimination complaint pursuant to OPCD's internal procedures and federal compliance requirements.

299.

After learning of the complaint and Ms. Landry's role in administering it, Mr. Fasold began retaliating against her by systematically undermining her professional authority, excluding her from the hiring process for the Deputy Director position, and diminishing her influence in HR-related matters.

300.

Mr. Fasold bypassed Ms. Landry and the HR department entirely in selecting his personal acquaintance, Heather Hilliard, a white candidate, for the Deputy Director position. He failed to consult Ms. Landry or submit documentation, in direct contradiction of standard practice.

301.

Ms. Landry's contributions were falsely minimized, with credit improperly given to a younger, less qualified non-African American subordinate. She was excluded from strategic meetings, staffing decisions, and team interactions, thereby isolating her from her leadership role.

302.

On September 25, 2023, OPCD terminated Ms. Landry's employment, citing alleged budgetary constraints. This reason was pretextual. No other departments were affected, and only the two African American women over age forty who had engaged in protected activity, Ms. Landry and Ms. Duplessis were terminated.

303.

Ms. Landry's termination and the adverse actions leading up to it were motivated by her protected conduct in processing and overseeing a Title VII complaint. These actions constitute unlawful retaliation.

304.

As a direct and proximate result of Defendant's retaliatory actions, Plaintiffs Duplessis and Landry suffered lost wages and benefits, emotional distress, reputational damage, and other compensatory damages.

305.

Defendant's actions were willful and in reckless disregard of Plaintiffs' federally protected rights.

306.

Plaintiffs' requests for relief are set forth below.

**AS FOR THE SEVENTH CAUSE OF ACTION AGAINST
DEFENDANT FOR A VIOLATION OF
42 U.S.C. § 1981
(Retaliation)**

307.

Plaintiffs, Patrina Duplessis and Aliska Landry state a cause of action for racial discrimination because of their protected activities against the defendant as they are protected under 42 U.S.C. § 1981. Plaintiffs repeat and re-allege the allegations contained in Paragraphs 94 and 203 as if fully set forth herein.

308.

42 U.S.C. § 1981 guarantees all persons within the jurisdiction of the United States the right to make and enforce contracts, which includes the right to be free from retaliation for opposing racial discrimination in the workplace.

59

**Plaintiff Patrina Duplessis:**

309.

Plaintiff Patrina Duplessis is an African American woman who, at all relevant times, was employed by the Orleans Parish Communication District ("OPCD") as a Human Resources Generalist and Payroll Administrator.

310.

Ms. Duplessis opposed racially discriminatory hiring practices by OPCD's Interim Executive Director, Karl Fasold, a Caucasian male, who exerted improper influence over the hiring process and pre-selected candidates based on personal and racial preference.

311.

Ms. Duplessis engaged in protected activity under § 1981 when she objected to Mr. Fasold's conduct and filed an internal grievance against his manipulation of the hiring process.

312.

In direct retaliation for engaging in this protected activity, Mr. Fasold subjected Ms. Duplessis to hostile and adverse treatment, including:

a)  Expressing animosity and discrediting her in a meeting on August 29, 2023;

b)  Stripping her of key responsibilities, including oversight of FMLA cases and policy-writing duties;

c)  Requiring her to return agency-issued credit cards; and

d)  Ultimately terminating her employment on September 25, 2023, under the pretext of budgetary constraints.

313.

The proffered justification for Ms. Duplessis's termination was pretextual. Her position was later refilled under a different title; however, similarly situated non-African American or younger employees were not terminated.

314.

Moreover, Mr. Fasold's admission that he encouraged others to file false complaints against Ms. Duplessis and expressed animus toward her affiliation with previous African American leadership further supports the retaliatory motive behind his actions.

**Plaintiff Aliska Landry:**

315.

Plaintiff Aliska Landry is an African American woman over the age of forty who, at all relevant times, was employed by OPCD as its Human Resources Manager.

316.

In or around August 2023, Ms. Landry's subordinate, Ms. Duplessis, filed an internal complaint of racial discrimination against Mr. Fasold. In the scope of her professional duties, Ms. Landry processed and escalated the complaint under OPCD's internal procedures and federal law.

317.

Ms. Landry's actions in facilitating the internal complaint constituted protected activity under 42 U.S.C. § 1981.

318.

In response to her protected activity, Mr. Fasold retaliated against Ms. Landry by:

    a) Excluding her from key decision-making and HR functions;

    b) Stripping her of authority in hiring decisions, including during the selection of Heather Hilliard, a white candidate with no meaningful HR input;

c) Undermining her authority by falsely crediting HR duties to a younger, non-African American employee despite their poor performance; and

d) Terminating her employment on September 25, 2023, alongside Ms. Duplessis, under the guise of budget cuts.

### 319.

There is no evidence that budget cuts were discussed or applied to other departments or employees outside the protected class. The terminations were narrowly applied to two African American women over forty who opposed or facilitated opposition to racial discrimination.

### 320.

The proximity in time between Ms. Landry's protected activity and her termination, combined with the absence of a legitimate non-discriminatory justification, gives rise to a strong inference of retaliation.

### 321.

Plaintiffs' requests for relief are set forth below.

## ADMINISTRATIVE PROCEDURES

### 322.

On or about July 1, 2024, the Plaintiff Patrina Duplessis filed a timely Charge of Discrimination against OPCD alleging discrimination with the Equal Employment Opportunity Commission ("EEOC").  (A true and accurate copy of EEOC Charge of Discrimination # 461-2024-00465, is attached hereto as "Exhibit A").

### 323.

On or about July 1, 2024, the Plaintiff Aliska Landry filed a timely Charge of Discrimination against OPCD alleging discrimination with the Equal Employment Opportunity

Commission ("EEOC").  (A true and accurate copy of EEOC Charge of Discrimination # 461-2024-02892, is attached hereto as "Exhibit B").

324.

The Plaintiffs have satisfied all statutory prerequisites for filing this action.

325.

On or about March 4, 2025, the EEOC issued a "Dismissal and Notice Of Rights" letter for Plaintiff Patrina Duplessis' Charge of Discrimination. On or about March 4, 2025, Plaintiff received this letter.  (A true and accurate copy of the EEOC "Dismissal and Notice of Rights" letter for EEOC Charge of Discrimination # 461-2024-00465, is attached hereto as "Exhibit C").

326.

On or about March 14, 2025, the EEOC issued a "Dismissal and Notice Of Rights" letter for Plaintiff Aliska Landry's Charge of Discrimination. On or about March 14, 2025, Plaintiff received this letter.  (A true and accurate copy of the EEOC "Dismissal and Notice of Rights" letter for EEOC Charge of Discrimination # 461-2024-02892, is attached hereto as "Exhibit D").

327.

To remedy the violations of the rights of the Plaintiffs, Plaintiffs requests that the Court award them the relief prayed for below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, Patrina Duplessis and Aliska Landry pray for the following relief:

1.

That the practices of Defendant complained of herein be determined and adjudged to be in violation of the rights of Plaintiffs under the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, violations of 42 U.S.C. § 2000e et seq., violations of

Age Discrimination in Employment Act of 1967, violations of 42 U.S.C. § 1981 et seq., and any other cause(s) of action that can be inferred from the facts set forth herein;

2.

All damages which Plaintiffs have sustained as a result of Defendant's conduct, including back pay, front pay, liquidated damages, punitive damages, general and special damages for lost compensation and job benefits she would have received but for Defendant's unlawful and retaliatory conduct;

3.

An award to Plaintiffs of pre-judgment interest at the highest available rate, from and after the date of service of the initial complaint in this action on all wages owed from the date such wages were earned and due;

4.

An award representing Defendants' share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

5.

Awarding Plaintiffs costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

6.

An award to Plaintiffs of compensatory and punitive damages against Defendant, including but not limited to damages for physical injury, emotional distress, humiliation, embarrassment, and anguish;

7.

Post-judgment interest, as provided by law; and

8.

Such other and further legal and equitable relief as may be found appropriate and may be deemed just or equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues do triable in this action.

Respectfully submitted this 2th day of June 2025.

Respectfully Submitted,

**THE MINIAS LAW FIRM**

*/s/ Karl White*
**Karl White (#40991)**
**Christopher Minias (#36230)**
1615 Poydras Street
Suite 900
New Orleans, LA 70112
Phone: (504) 777-7529
Fax: (504) 556-2866
Email:  karl@miniaslaw.com
             chris@miniaslaw.com

## SERVICE INFORMATION

Plaintiffs mailed this day, June 2, 2025, by USPS certified mail Notice of Lawsuit and *Request to Waive Service of a Summons*, two copies of the *Waiver of the Service of the Summons Citation and Acceptance of Service* and a stamped self-addressed envelope to Defendant's agent: Karl Fasold – Executive Director 118 City Park Avenue, New Orleans, LA 70119.

*/s/ Karl White*
KARL WHITE

65